Entered on Docket
March 11, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed March 11, 2011

_____
**Stephen L. Johnson
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>KATHLEEN MORASCI,<br><br>　　　　　　Debtor. | Case No. 09-57445 SLJ<br>Chapter 7 |
| MICHAEL GIORDANO,<br>　　Plaintiff,<br>v.<br>KATHLEEN MORASCI,<br>　　Defendant. | A.P. No. 09-5320 SLJ |

**MEMORANDUM DECISION**

## I.　INTRODUCTION

On April 15, 2010, plaintiff Michael Giordano ("Plaintiff") filed the Amended Complaint to Determine Nondischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6) and 11 U.S.C. §§727(a)(2) and (4), seeking to deny defendant and debtor Kathleen Morasci ("Defendant" or

"Moraschi") a discharge under § 727(a)[1], or a discharge of her obligation to Plaintiff under § 523(a). The court held a trial in this action on March 7, 2011. Plaintiff was represented by Kathryn S. Diemer, Esq.; Defendant represented herself.

For the reasons stated below, the court will enter judgment for Defendant.

## II. FACTS[2]

After listening to the evidence (including the testimony of Plaintiff, Defendant, Mike Parry, and Janice West), the court makes the following findings:

1. In 2006, Defendant sold the personal residence she inhabited with her three minor daughters and used the funds generated by that sale to become a franchisee of EmbroidMe. The franchisees of EmbroidMe produce clothing, uniforms, and specialty products with embroidered logos, screen prints, uniforms and specialty products.

2. Defendant selected this franchise opportunity because it was "turn key". She believed she had the creative skills necessary for this industry. She conceded her business skills were insufficient and thought the business support offered to franchisees of EmbroidMe would help her.

3. As part of opening her store, Defendant signed a Franchise Agreement with EmbroidMe and an Equipment Lease with Brother International Corporation ("Brother International"). The Equipment Lease required monthly payments of $3,213.13. Defendant also leased commercial space for approximately $3,000 per month.

4. By 2008, Defendant's EmboidMe franchise was failing. She had invested all the financial resources she had in the store but had failed to make the enterprise profitable.

5. Defendant approached a longstanding friend, Plaintiff, to discuss her situation. Plaintiff and Defendant agreed that Plaintiff could assist Defendant with her franchise by providing capital and business acumen as well as business referrals. In April 2008, they agreed to form a

---

[1] All code references are to the Bankruptcy Code 11 U.S.C. § 101 *et seq*. unless otherwise indicated.

[2] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

partnership on that basis and thereafter applied for a fictitious business license, a taxpayer identification number, and a merchant account with Pivotal Payments (the "Merchant Account") which was administered by Wells Fargo Bank.

6.  Plaintiff and Defendant agreed to use a lawyer who was a common acquaintance to draft their partnership agreement.

7.  Shortly thereafter, Plaintiff paid a total of $16,306.19 for employee payroll, delinquent rent ($4,478.50), suppliers, and other expenses at Defendant's EmbroidMe store location.

8.  Ultimately, Plaintiff and Defendant could not reach a final agreement on the terms of their partnership. Plaintiff wanted a 50%-50% partnership structure but Defendant believed this would make decision making difficult. She wanted to retain at least 51% control.

9.  Ultimately, the parties agreed not to form a partnership.

10. Plaintiff and Defendant agreed to treat Plaintiff's advances of $16,306.19 as a loan to Defendant. Defendant signed a promissory note dated June 3, 2008, in the amount of $16,306.19, which is a demand note with no set repayment terms. Plaintiff filed a UCC-1 to secure his interest in Defendant and EmbroidMe's assets.

11. At this time, and at points thereafter, Defendant told Plaintiff she would see that he was paid when she sold the EmbroidMe franchise.

12. Defendant began efforts to sell the EmboidMe store.

13. On a monthly basis, Defendant was obligated to pay more than $3,000 on her commercial lease and $3,213.13 per month on the Equipment Lease. The store was not profitable.

14. During October 2008, Defendant approached Plaintiff to ask him to release his "attachment" on the store and its assets. The parties used this term inappropriately because Plaintiff did not have an attachment lien on the business. At best, Plaintiff had a security interest in the business.[3]

15. Defendant had little success in finding a buyer. She concluded reluctantly that the

---

[3]  The court assumes – without deciding – Plaintiff had a valid security interest in the store, lease, franchise, and Merchant Account.

store had no value.

16. In desperation, she contacted the franchisor, EmbroidMe. The company put her in contact with Mike Parry ("Parry"), who had expressed an interest in obtaining a franchise.

17. In November 2008, Defendant transferred the EmboidMe store to Mike Parry ("Parry"). According to the terms of the Agreement of Purchase and Sale of Assets dated November 26, 2008, Parry paid $22,500 to EmboidMe to acquire the franchise agreement, and $15,000 to Brother International for arrearages on the Equipment Lease.

18. Parry made an arrangement with the landlord of the business premises to allow him to take on a new lease. Parry did not assume the trade debts of the store.

19. Defendant obtained nothing from the sale beyond the release of her financial obligations on the property lease and Equipment Lease.

20. After concluding the sale, Defendant made an arrangement with Parry to work at the store while Parry received necessary training off site by EmbroidMe.

21. Defendant allowed Parry's store to use the Merchant Account for approximately thirty days after the store had been transferred to Parry.

22. Parry testified that the store deposited $16,000-$18,000 in the Merchant Account in December 2008, and that Defendant used that money while she was still associated with the store. Defendant said she used this money for wages, the costs of fabric, and other materials necessary to keeping the operation running.

23. The court finds the $16,000-$18,000 figure is not supported by the evidence. Parry testified to that amount, but he conceded his memory – at least for dates – was weak. No documentation supports that number. Also, the average balance for credit card collections from February to September 2008 was $6,695.86, a number that is far below the $16-18,000 claimed for December.

24. Defendant testified credibly that she always intended to pay Plaintiff the $16,306.19. She promised to pay him when the store sold.

25. When it became clear the store did not have any value, she sought to limit her

MEMORANDUM DECISION        -4-

financial commitments going forward by having someone assume the franchise. She hoped that by transferring the store to Parry, she would limit her obligations for rent and Equipment Lease payments totaling more than $6,000 per month.

26. Defendant hoped to make payments to Plaintiff once her substantial obligations arising out of the store's operations had been reduced. After transferring the store to Parry she made at least one payment of $250 to Plaintiff.

27. In the Summer of 2009, Plaintiff filed a state court collection action against Defendant. Defendant filed her chapter 7 bankruptcy case on September 1, 2009, when she could not pay Plaintiff immediately and had no other recourse.

## III. DISCUSSION

### A. Introduction

The court notes that "[a] fundamental policy of bankruptcy law is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.'" *Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008)(quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

### B. Burden of Proof

The burden of proof for any claim of nondischargeability under § 523 lies with the plaintiff. *Grogan v. Garner*, 498 U.S. 278, 286 (1991); *Transamerica Comm. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991). Fraud must be shown by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 286. In a § 727(a) action, the same rule applies. Fed. R. Bankr. P. 4005.

### C. § 523(a)(6)

Section § 523(a)(6) excepts tortious acts from discharge under certain conditions. It bars a discharge of debts arising out of "willful and malicious injury by the debtor to another entity or to the property of another entity." Plaintiff claims Defendant's sale of the EmbroidMe store to Parry was a conversion of Plaintiff's secured interest in that business. He maintains conversions of assets categorically qualify as tortious acts excepted from discharge under § 523(a)(6). Plaintiff also

MEMORANDUM DECISION -5-

alleges Defendant's use of the Merchant Account in December 2008 was a conversion of his secured interest in that account. Plaintiff relies on a case from the Bankruptcy Appellate Panel, *Thiarra v. Spycher Brothers*, 285 B.R. 420 (BAP 9th Cir. 2002) in support of these positions.

The law in this area is complex but reasonably clear. To be actionable under § 523(a)(6), a debtor's conduct must be tortious, and must be both willful *and* malicious. *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 61 (1998); *Carrillo v. Su (In re Su)*, 290 F.3d 1038, 1040-41 (9th Cir. 2002). The Supreme Court discussed the "willful" element in *Kawaauhau v. Geiger*. That case holds a defendant must intend both the act and the consequences of the act. *Kawaauhau v. Geiger*, 523 U.S. at 61. The Supreme Court's ruling has been interpreted by the Ninth Circuit in many cases and the court has set a high bar. According to the Ninth Circuit, a bankruptcy court must find that a debtor/defendant subjectively intended to harm the plaintiff, or held a subjective belief that harm was substantially certain to come from the tortious act. *Carrillo v. Su*, 290 F.2d at 1144; *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).

Defendant did not intentionally harm Plaintiff when she transferred the store. Defendant attempted without success to sell the store at a profit. She concluded the store had no value. After many months, she transferred it to Parry who paid EmbroidMe a franchise fee, delinquent rent on the Equipment Lease, and made an arrangement with the existing landlord for the store space. The court cannot conclude on this record that Defendant subjectively intended to harm Plaintiff. So far as Defendant knew, the store had no value. Her efforts to sell the store had come to naught.

For an act to be "malicious," it must be wrongful, must be done intentionally, must cause injury, and must be done without just cause or excuse. *Carrillo v. Su (In re Su)*, 290 F.3d at 1146. Defendant did not act with malice toward Plaintiff. The court credits her testimony that she hoped the transfer of the store would eliminate the heavy burden of the commercial lease and the Equipment Lease on her finances. She intended to eliminate those burdens to free her up to make money and pay Plaintiff. Indeed, prior to Plaintiff suing her in state court, she made at least one payment to him. She only filed her bankruptcy petition after he brought suit.

Plaintiff argues that Defendant's use of money in the Merchant Account constitutes

MEMORANDUM DECISION -6-

conversion. The court cannot conclude that is true. The money in the Merchant Account was generated after the transfer of the store and belonged to Parry. Plaintiff cannot claim to have been harmed if he had no claim on the assets. Defendant testified she used the money in that Merchant Account while Parry was away in an effort to keep the doors open on payroll and merchandise. The court has found no credible evidence to support the assertion that $16,000-$18,000 was taken.

The BAP's decision in *Thiara,* a case which the BAP remanded to the bankruptcy court, is of limited use. In that case, the debtor/defendant absconded with a $452,212 crop loss payment which ought to have been paid to a lender. The BAP concluded the bankruptcy court did not apply the correct standard under *Jercich*, and remanded the case for further fact-finding. The case is factually inapposite. In *Thiara*, the defendant converted $452,212 in crop loss funds meant to pay his lender. Defendant here received no consideration from the transfer of the store aside from a release of ongoing obligations to her landlord and Brother International.

Not all conversions satisfy the exacting standards of § 523(a)(6). In *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035 (9th Cir. 2001), the plaintiff obtained a state court judgment of conversion after the debtor removed furniture and fixtures owned by Ikerd from real property Peklar lost to foreclosure. The Ninth Circuit held that taking the furniture was an "innocent or technical conversion" because the defendant/debtor relied on the advice of her lawyer in removing the equipment and thought that course was authorized under the law. The debt arising from the state court judgment was dischargeable because it did not satisfy § 523(a)(6)'s intentional act requirement.

This case is similar to the Ninth Circuit's decision in *Transamerica Comm. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d at 554. In that case, the defendants ran a business whose inventory was financed by Transamerica. Just prior to the failure of the business, the company stopped paying Transamerica for inventory. The company failed and its principals made their way into bankruptcy court where Transamerica sued them under § 523(a)(6) for converting its secured interest in the inventory. The Ninth Circuit held the debt dischargeable: "The defendants at all times were acting with the hope and expectation, perhaps improvidently, but sincere[] ... they could

MEMORANDUM DECISION -7-

keep the business going." Defendant here kept the business running while trying to sell it. She found no one wanted to pay for the business and transferred it to Parry for no consideration. She concluded – quite reasonably – the business had no value. She did not intend to harm Plaintiff and did not act with malice.

D. § 727(a)(2)

Section 727(a) provides that a debtor should not receive a discharge of debts if the debtor:

> [W]ith intent to hinder, defraud or delay a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, mutilate, or concealed,
>
> (A) property of the debtor, within one year of before the filing of the petition, or
>
> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a). The Ninth Circuit considered this statute in *Hughes v. Lawson (In re Lawson),* 122 F.3d 1237 (9th Cir. 1997), cited by Plaintiff. According to the *Lawson* court, "two elements comprise an objection to discharge under § 727(a)(2)(A): 1) a disposition of property, such as by transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *Id*. at 1240.

Plaintiff contends Defendant's transfer of the store and the use of the $16,000-$18,000 generated in December is grounds for denial of discharge under § 727(a)(2). The court cannot find Defendant's conduct satisfies § 727(a)(2). As an initial matter, the court does not find that Defendant disposed of property. Defendant walked away from a failing enterprise. Furthermore, the money she used from the Merchant Account was generated by the new owner, Parry, who came into ownership at the conclusion of November 2008.

Even if the court assumed Defendant disposed of property, Plaintiff has not proven a case under § 727(a)(2). Plaintiff has not proven that Defendant harbored the subjective intent to hinder, delay or defraud him. Defendant signed a promissory note to pay Plaintiff after their attempt at a business partnership failed. She attempted to sell the store to generate funds to cover that debt. She quickly realized the store had no value. She transferred the store to Parry in an attempt to limit her

MEMORANDUM DECISION -8-

ongoing liabilities. She only filed the bankruptcy case after Plaintiff sued her in state court. The court finds Defendant's actions were typical of a failing business owner. Her actions do not support a conclusion that she deliberately set out to hinder, defraud or delay Plaintiff.

Plaintiff relied heavily on Defendant's request that he remove his "attachment" on the store in October of 2008 as evidence that she intended to defraud him. The court cannot make that finding. Plaintiff never had an attachment on the store. At best, he had a lien. But he had a lien on assets that could not be sold. Defendant's comment simply shows she was trying to figure out a way to market the store without the black mark of Plaintiff's so-called "attachment." It is not evidence of intent to defraud.

Finally, the funds generated by the store after Parry bought it belonged to Parry, not Defendant. After the store was transferred, the funds could not have been subject to any lien by Plaintiff, and cannot support a claim under § 727(a)(2).

E.  § 523(a)(2)

Section 523(a)(2) excepts from discharge a debt

> [F]or money, property, services, an extension of credit, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

§ 523(a)(2). Plaintiff asserts that Defendant misrepresented that she owned the equipment, failed to identify a senior lienholder on the property "attached" by Plaintiff, and failed to notify Plaintiff she sold the assets to Parry.

Plaintiff's claim is not supported by the evidence. Plaintiff did not testify that Defendant told him that she owned the equipment. He also did not testify that he relied on any such claim when he paid Defendant's bills. In addition, the facts showed that Plaintiff did not advance money to Defendant as a loan – he advanced the money in the expectation that the parties would enter into a partnership. That effort failed and only later did Defendant sign a promissory note. Plaintiff and Defendant failed to reach an agreement about the partnership and went their separate ways. They

MEMORANDUM DECISION -9-

Case: 09-05320    Doc# 29    Filed: 03/11/11    Entered: 03/11/11 16:41:14    Page 9 of 10

had an honest disagreement about their business relationship. The court concludes Defendant made no representation that was false to obtain Plaintiff's investment in her enterprise.

The remaining claim – that Defendant did not tell Plaintiff she transferred the store – does not support a claim under §523(a)(2). Defendant said nothing about the transfer so she made no representation. Plaintiff does not allege it, but if he claims he delayed his effort to collect because Defendant told him she was trying to sell the store, he has no cause of action. Defendant marketed the store unsuccessfully for a long time. Doing so, and telling Plaintiff she was doing so, is not fraud.

F. § 523(a)(4)

Section 523(a)(4) bars discharge of a debt arising out of "fraud while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiff asserts that Defendant acted as fiduciary for him. Plaintiff introduced no facts to support that conclusion. The parties were acquaintances or friends but not fiduciaries for each other.

**IV. CONCLUSION**

For the foregoing reasons, the court concludes Defendant should receive a discharge of her debt to Plaintiff and of her debts in general. Judgment will be entered in favor of Defendant.